UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>DEJIAN SHIV JOHL,<br>Defendant. | No. 2:25-cr-00075 WBS<br><br>MEMORANDUM OF DECISION RE: SENTENCING GUIDELINES |

----oo0oo----

Defendant Dejian Shiv Johl objects to two special offense characteristic enhancements to the calculation of the Sentencing Guidelines in the pre-sentence investigation report in this case. (Objs. (Docket No. 40).) Specifically, defendant argues that the enhancements for knowingly misrepresenting or marketing fentanyl and for maintaining a premises for drug distribution or manufacture are inapplicable. (Id.) This memorandum states the court's factual findings, analysis, and legal conclusions with respect to those objections.

I. Knowingly Misrepresenting or Marketing Disguised Fentanyl

The first enhancement at issue calls for a four-level increase "[i]f the defendant . . . knowingly misrepresented or knowingly marketed as another substance a mixture or substance containing fentanyl . . . or a fentanyl analogue." U.S.S.G. § 2D1.1(b)(13).

The court concludes that the evidence is insufficient to support a finding that defendant knowingly misrepresented fentanyl as another substance. "A person 'knowingly misrepresents' fentanyl as another substance when he, being aware that the substance he distributes contains fentanyl, asserts or communicates to the person to whom he distributes that it does not." United States v. Matthews, 155 F.4th 845, 851 (6th Cir. 2025). Defendant's plea agreement establishes that he "discussed the sale of 'blues' (counterfeit oxycodone pills containing fentanyl) with R.B. on X" and "ultimately sold R.B. these drugs in three separate transactions." (Plea Agreement at 10 (Docket No. 22).)

However, nothing in the plea agreement nor the agreed-upon facts shows that defendant ever communicated to R.B. or anyone else that the drugs he was selling did not contain fentanyl. Rather, defendant's online advertisements expressly distinguished the counterfeit pills from genuine ones, offering the former for $6 and the latter for $40, and invited customers to test them. (Def.'s Suppl. Br. at 6 (Docket No. 49); Pl.'s Suppl. Br. at 9 (Docket No. 50) ("Menu [right now]: $6 [for] a blue[,] $40 [for] a real oxy[codone] 30[mg] (test [th]em).").) Defendant's candor with his buyers forecloses a finding of

knowing misrepresentation.

The evidence does, however, support a finding that defendant knowingly marketed fentanyl as another substance. "A person 'knowingly markets' fentanyl as another substance when he sells or advertises it as something else despite his awareness that the substance contains fentanyl." Matthews, 155 F.4th at 851. Unlike misrepresentation, marketing requires no false statement. See id. It involves placing into the market highly dangerous drugs that misleadingly resemble less-dangerous illicit drugs or bona fide pharmaceuticals made under strict regulatory conditions. See U.S.S.G. App. C, amend. 807 (2018) (noting that purchasers "may believe that they are purchasing heroin or pharmaceutically manufactured opioid pain relievers"); United States v. Salinas, 132 F.4th 1083, 1091 (8th Cir. 2025). With regard to disguised fentanyl, that deception is particularly dangerous. See U.S.S.G. App. C, amend. 807 ("Because of fentanyl's extreme potency, the risk of overdose death is great, particularly when the user is inexperienced or unaware of what substance he or she is using.").

The evidence shows that although defendant did not advertise them as such, defendant sold the "blues" as real oxycodone pills. A counterfeit is "[m]ade to look genuine in an effort to deceive." Counterfeit, Black's Law Dictionary (12th ed. 2024). Defendant sold fentanyl-laced counterfeit pills made to pass as oxycodone. (Plea Agreement at 10.) He therefore sold them as oxycodone. See Matthews, 155 F.4th at 852-53 (affirming enhancement when defendant sold pills "designed to resemble oxycodone pills"); United States v. Hardy, 171 F.4th 1082, 1085-

86 (8th Cir. 2026) (affirming enhancement "[b]ecause [defendant] conceded that the pills' coloration and markings indicate a substance other than fentanyl, that he knew they were in fact fentanyl, and that he placed these pills in the market").

Defendant argues that the enhancement does not apply because direct purchasers knew that the "blues" were counterfeit. (Def.'s Suppl. Br. at 6.) That is irrelevant to this question. Defendant provided the drug market with the means to deceive vulnerable downstream purchasers. Such conduct constitutes "marketing." See United States v. Rucks, No. 23-2199, 2025 WL 1924932, at *1 (9th Cir. July 14, 2025) (upholding enhancement where defendant sold fentanyl disguised as oxycodone to "middlemen purchasing drugs for further resale to unknowing downstream purchasers"). Accordingly, defendant's objection is overrued, and finds that the disguised-fentanyl enhancement applies.

II. Maintaining a Premises for Drug Distribution or Manufacture

The second enhancement at issue increases the offense level by two "[i]f the defendant maintained a premises for the purpose of manufacturing or distributing a controlled substance." U.S.S.G. § 2D1.1(b)(12); see also id. cmt. n.17 (advising courts to consider defendant's possessory interest and control).[1]

Applying the enhancement here would be contrary to its text. The evidence is insufficient to support a finding that the defendant owned, possessed, or controlled the premises. The

[1] Effective November 1, 2026, the Sentencing Commission redesignated § 2D1.1(b)(12) as § 2D1.1(b)(11). All citations herein are to the provision as it was designated under the 2024 Guidelines: § 2D1.1(b)(12).

government nevertheless argues that the court may attribute a co-conspirator's maintenance of the premises to defendant under § 1B1.3(a)(1)(B). See U.S.S.G. § 1B1.3(a)(1)(B) (directing co-conspirator attribution "[u]nless otherwise specified"). But § 2D1.1's text and structure indicate that the premises-maintenance enhancement does not incorporate § 1B1.3(a)(1)(B).

The neighboring mass-marketing enhancement makes this clear. It applies "[i]f the defendant, or a person for whose conduct the defendant is accountable under § 1B1.3 (Relevant Conduct), distributed a controlled substance through mass-marketing by means of an interactive computer service." U.S.S.G. § 2D1.1(b)(7) (emphasis added). The Sentencing Commission thus expressly invoked § 1B1.3 when it intended a specific offense characteristic to reach co-conspirator conduct. Section 2D1.1(b)(12), by contrast, does not mention the conduct of other persons, just that of the defendant. This omission indicates that the defendant himself must have maintained the premises.[2] Because the evidence in the record does not support such a conclusion, the court sustains defendant's objection and concludes that the premises-maintenance enhancement does not apply.

---

[2] The government relies on Sixth and Eleventh Circuit decisions adopting its view. See United States v. Rich, 14 F.4th 489, 495-97 (6th Cir. 2021); United States v. Holmes, 767 F. App'x 831, 839 (11th Cir. 2019). The Eighth Circuit, by contrast, has assumed without deciding that the enhancement requires proof that "the specific defendant being sentenced maintained the premises." See United States v. Miller, 698 F.3d 699, 706 (8th Cir. 2012). Moreover, Rich and Holmes did not consider the contrast with § 2D1.1(b)(7). The court therefore finds those decisions unpersuasive.

For the foregoing reasons, the court will apply the § 2D1.1(b)(13) disguised-fentanyl enhancement, but not the § 2D1.1(b)(12) premises-maintenance enhancement, to defendant's guideline calculation. Defendant's offense level is therefore 37 with a criminal history category of II, resulting in a guidelines range of 235 to 293 months. (See Presentence Investigation Report at 14-15 (Docket No. 30).) The court will determine all other sentencing issues at the November 16, 2026 sentencing hearing.

Dated: November 9, 2026

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE